IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIMOTHY S. C.,[1]

      Plaintiff,

vs.

COMMISSIONER of SOCIAL SECURITY,

      Defendant.

Case No. 19-cv-622-DGW[2]

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in November 2015, alleging disability as of August 6, 2015. After holding an evidentiary hearing, an ALJ denied the application on June 18, 2018. (Tr. 15, 29). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 8.

this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following point:

1. The ALJ erred by failing to account for moderate deficits of concentration, persistence or pace within the residual functional capacity finding.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB only through September 30, 2017.

The ALJ found that plaintiff had severe impairments of chronic obstructive pulmonary disease (COPD), lumbar spondylolisthesis, mild tricompartmental osteoarthritis of the right knee, right shoulder tendinopathy, chronic kidney disease, vasovagal syncope, depression, and anxiety.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform work at the medium exertional level limited to lifting/carrying fifty pounds occasionally and twenty-five pounds frequently with the ability to stand/walk six hours of an eight-hour workday, and the ability to sit for six hours. He is further limited to frequent climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. He is restricted to frequent stooping and crouching, and occasional kneeling and crawling. He must avoid concentrated exposure to pulmonary irritants such as fumes, dust, odors, gases, poor ventilation, etc. and exposure to hazards. He must also avoid driving. Mentally, he is restricted to simple, routine work, which includes simple work-related decisions and he is able to adapt to simple, routine work changes. He can interact frequently with coworkers and supervisors, but he must avoid contact with the public.

Plaintiff is unable to perform any past relevant work. Based on the testimony

of a vocational expert, the ALJ concluded that plaintiff was not disabled because he was able to do jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1.   **Agency Forms**

Plaintiff was born in 1967 and was 50 years old on the date of the ALJ's decision. (Tr. 249). He was self-employed working in construction from January 1995 to December 2014. He then worked at a bar and grill as a food prepper/cleaner/dishwasher from January 2014 to February 2016. (Tr. 59-60, 255).

In a Function Report submitted in December 2015, plaintiff said he could not work because of his blood pressure, he was very fatigued most days, his bones ached, his breathing was hard, he had depression, and he slept abnormally. He said on a typical day he tries to keep motivated without his depression affecting him, needs encouragement to keep from getting depressed, and he does not have an appetite. He does laundry, does the dishes, and dusts, said he will shop in stores, but has no money coming in and is "just surviving." His interests include Facebook, news, and the Illinois budget, and said he is worried about surviving. His social activities include spending time with others, watching football, and playing dominoes and cards. He said his family is dysfunctional, he grew up in

of a vocational expert, the ALJ concluded that plaintiff was not disabled because he was able to do jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1.   **Agency Forms**

Plaintiff was born in 1967 and was 50 years old on the date of the ALJ's decision. (Tr. 249). He was self-employed working in construction from January 1995 to December 2014. He then worked at a bar and grill as a food prepper/cleaner/dishwasher from January 2014 to February 2016. (Tr. 59-60, 255).

In a Function Report submitted in December 2015, plaintiff said he could not work because of his blood pressure, he was very fatigued most days, his bones ached, his breathing was hard, he had depression, and he slept abnormally. He said on a typical day he tries to keep motivated without his depression affecting him, needs encouragement to keep from getting depressed, and he does not have an appetite. He does laundry, does the dishes, and dusts, said he will shop in stores, but has no money coming in and is "just surviving." His interests include Facebook, news, and the Illinois budget, and said he is worried about surviving. His social activities include spending time with others, watching football, and playing dominoes and cards. He said his family is dysfunctional, he grew up in

DCFS since he was eleven years old, he does not really go anywhere, and his social life is limited. He said he does not finish what he starts, he has to read things twice, and he can follow instructions depending on what kind of instructions they are. He said he has no concentration, and the quality of his concentration depends on how well he slept the night before, if his blood pressure stays stable, and if his mind wanders. Regarding completing tasks, he said he jumps from one thing to another. He said he gets along with authority figures pretty well, but he was fired from a job before because of problems getting along with others. He said he does not handle stress and changes in routine well, and every day he fears dying. (Tr. 261-268).

2.  **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in March 2018. There was no discussion of plaintiff's mental impairments during the hearing. The discussion solely revolved around plaintiff's physical impairments.

The ALJ posed a first hypothetical to the vocational expert, which included, "Would [be] limited to simple routine work which includes simple work related decisions. Can adapt to simple routine work changes, but never working with the public. Can have up to frequent interaction with co-workers and supervisors." (Tr. 74).

3.  **Relevant Medical Records**

Plaintiff saw a primary care provider and internist, Sambasivam Suthan, on May 6, 2015. Dr. Suthan noted alcohol abuse, recommended plaintiff quit drinking, and planned a referral to a psychiatrist as needed. A mental status exam

revealed plaintiff had good judgment, had a normal mood and affect, was active and alert, and was oriented to time, place, and person. (Tr. 376, 378). Plaintiff saw John Verna, a physician's assistant, on May 18, 2015. PA-C Verna noted alcohol abuse in which plaintiff drank forty-eight ounces of beer daily and PA-C Verna recommended plaintiff stop drinking alcohol. Plaintiff reported no depression. In a mental status exam, PA-C Verna noted plaintiff was active and alert with normal affect, oriented to time, place and person, and had normal recent memory. (Tr. 372, 374).

Plaintiff saw PA-C Verna in June 2015. In the review of systems, plaintiff reported no depression. In a mental status exam, PA-C Verna noted plaintiff had fair insight, was active and alert, had normal affect, was oriented to time, place and person, and his recent memory was normal. (Tr. 360-363).

Plaintiff saw Dr. Suthan in September 2015 reporting anxiety and depression symptoms that worsen during the day, emotional lability, difficulty staying asleep, and generalized body pain when he wakes up. Dr. Suthan noted plaintiff had good judgment, was active, alert, anxious, and oriented to time, place and person. Dr. Suthan's assessment included generalized anxiety disorder with fatigues and difficulty staying asleep, and he prescribed Sertraline. (Tr. 348, 350).

Plaintiff returned to Dr. Suthan in December 2015 complaining of depression and not feeling well. Plaintiff said his anxiety and depression symptoms worsened during the day, denied suicidal ideations, and said he had social withdrawal. Dr. Suthan noted plaintiff had good judgment, and a mental status exam revealed

plaintiff was active, alert, anxious, and oriented to time, place and person. Dr. Suthan noted generalized anxiety disorder, found the Citalopram was unhelpful, prescribed Lexapro 10 mg daily, and planned a behavioral psychotherapy referral to a counselor as requested. (Tr. 470-473).

Plaintiff underwent a consultative psychological examination on February 4, 2016, performed by Stephen Vincent, a licensed clinical psychologist. Plaintiff reported a history of significant alcohol consumption, requiring multiple detox and rehabilitation programming, but reported he has been clean and sober for approximately fifteen years. He was not attending Alcoholics Anonymous or Narcotics Anonymous. Regarding depression, plaintiff reported "feeling sad all the time, with related problems not expecting things to work out for him, feeling as though he has failed more than he should, with no pleasure in things he used to enjoy, feeling guilt and self-dislike, being irritable and agitated with problems with being indecisive, feeling useless and worthless with disturbances of sleep and troubles with fatigue." (Tr. 543-544).

Plaintiff reported having anxiety, nervousness, and worry about any type of chest pain or shortness of breath. His anxiety symptoms include, "constant worry that something bad is going to happen, ease of irritability and annoyance with others with associated restlessness and troubles relaxing…he worries too much about different things which usually are not that important, yet, bothersome…he always feels nervous, tense, anxious and edgy." He reported no involvement with counseling efforts but takes Citalopram as a replacement for Sertraline and also

takes Trazodone. Plaintiff denied suicidal thoughts, intention or plan. He reported his memory is intact and denied any disturbances regarding quality, form, or content of thought. (Tr. 544).

Dr. Vincent's conclusions included signs of depression that include troubles concentrating, lack of interest in daily activities, low energy, troubles sleeping, irritability, constant worry, lack of motivation, and a tendency to withdraw and isolate. Dr. Vincent did not believe plaintiff was psychotic. His diagnostic impressions included mood disorder secondary to general medical conditions with major depression-like features and anxiety secondary to general medical conditions. (Tr. 545-546).

Between February 2016 and January 2018, plaintiff presented multiple times to cardiologists Peter Mikolajczak and Sundeep Das. At these appointments, Dr. Mikolajczak and Dr. Das noted plaintiff was alert and oriented to time, place and person, and his mood and affect were normal. (Tr. 530, 534, 831, 836, 841, 847, 853, 858, 862, 1004).

At a physical therapy appointment on February 18, 2016, plaintiff said he quit taking depression and anxiety medication while on a new anti-inflammatory medication, but it was only for a month. He expressed hope that he would do well without the psychiatry medications. (Tr. 498).

Dr. Suthan saw plaintiff in March 2016 and noted plaintiff's anxiety was symptomatically better. Plaintiff said his anxiety and depression symptoms improved, denied suicidal ideations, said he had the ability to maintain

relationships, denied major life stressors, and was in a good mood with no anxiety present. (Tr. 668-669). Dr. Suthan noted plaintiff had good judgment, and a mental status exam revealed plaintiff as active, alert, and oriented to time, place and person. (Tr. 671).

Hospital records from April 2016 regarding a cardiology visit reflect questions such as, "Have you had recent life stressors that affect your ability to cope?" and "Are you having thoughts of suicide or hurting yourself?" to which plaintiff answered, "No." (Tr. 620).

In July 2016, plaintiff presented to Dr. Suthan who noted plaintiff's anxiety was symptomatically better. Plaintiff reported his anxiety and depression symptoms improved, denied suicidal ideations, said he had the ability to maintain relationships, reported no life stressors, and reported a good mood with no anxiety present. Dr. Suthan noted plaintiff to have good judgment, and a mental status exam revealed plaintiff as active, alert and oriented to time, place and person. (Tr. 665, 668).

4. **Medical Opinions**

In February 2016, acting as a state agency consultant, Russell Taylor, Ph.D. assessed plaintiff's medically determinable impairments (MDI) and RFC based on a review of the file contents. He used electronic versions of the agency forms that are commonly used for this purpose, the Psychiatric Review Technique (PRT) Form and the Mental RFC Assessment Form. (Tr. 83-85, 88-90). Dr. Taylor indicated that plaintiff had medically determinable impairments, including affective

disorders and anxiety disorders. On the PRT form, Dr. Taylor indicated plaintiff had moderate difficulties in concentration, persistence or pace. (Tr. 84).

On the Mental RFC form, Dr. Taylor answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" Under that section of the form, he rated plaintiff as "moderately limited" in ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 89). He answered "yes" to the question "Does the individual have social interaction limitations?" and rated plaintiff as "moderately limited" in ability to interact appropriately with the general public. He also answered "yes" to the question "Does the individual have adaptation limitations?" and rated plaintiff as "moderately limited" in the ability to respond appropriately to changes in the work setting. (Tr. 90).

In the sections for "narrative discussion" under each of the above areas, Dr. Taylor wrote "below." This apparently refers to the last area of the form, entitled "MRFC – Additional Explanation." Here, Dr. Taylor wrote, in part, "The [claimant] retains the mental capacity to understand, remember and concentrate sufficiently in order to carry out simple instructions/tasks for a normal work period. The [claimant] could make simple work related decisions…The [claimant] could adapt to simple, routine changes and pressures in the work environment." (Tr. 90).

## Analysis

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Plaintiff made this argument in his brief, citing *Yurt* among many other cases. Doc. 13, pp. 6-11.

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. The ALJ noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 20).

The ALJ gave "great weight" to Dr. Taylor's opinion. He noted that while Dr. Taylor did not actually examine plaintiff, his opinion is supported and consistent with the record as a whole. (Tr. 27).

At the evidentiary hearing, and as explained above, the ALJ posed his

hypothetical to the VE as such, "Would [be] limited to simple routine work which includes simple work related decisions. Can adapt to simple routine work changes, but never working with the public. Can have up to frequent interaction with co-workers and supervisors." (Tr. 74). The ALJ did not expand on his hypothetical but rather used shallow terminology that the Seventh Circuit has continually viewed as insufficient.

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. "[O]bserving that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). See also, *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019); *Winsted v. Berryhill*, 915 F.3d 466 (7th Cir. 2019); *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Taylor v. Colvin,* 829 F.3d 799 (7th Cir. 2016); *Varga v. Colvin,* 794 F.3d 809 (7th Cir. 2015).

The crux of defendant's argument relies on the assertion that plaintiff should

have identified supported limits that the ALJ omitted, and the failure to do so makes plaintiff's argument fail. However, plaintiff makes a convincing point that the ALJ failed to acknowledge Dr. Taylor's finding of plaintiff's moderate limitation in his ability to "maintain attention and concentration for extended periods," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 89). Therefore, defendant's argument fails.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. Here, both the assessment of plaintiff's subjective allegations and the RFC assessment were not supported by substantial evidence. The Court must conclude that the ALJ failed to build the requisite logical bridge here.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social

have identified supported limits that the ALJ omitted, and the failure to do so makes plaintiff's argument fail. However, plaintiff makes a convincing point that the ALJ failed to acknowledge Dr. Taylor's finding of plaintiff's moderate limitation in his ability to "maintain attention and concentration for extended periods," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 89). Therefore, defendant's argument fails.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. Here, both the assessment of plaintiff's subjective allegations and the RFC assessment were not supported by substantial evidence. The Court must conclude that the ALJ failed to build the requisite logical bridge here.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social

security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: February 21, 2020.**

                                           **DONALD G. WILKERSON**
                                           **UNITED STATES MAGISTRATE JUDGE**